## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

LAKEISHA VARNADO, individually,
and on behalf of minors, K.A.V.,
and K.E.V. and TREDONOVAN RABY,
on behalf of minor T.R.
                    Plaintiff,


        v.                                              No. 3:24-cv-133

JOSEPH CARBONI., in his personal
capacity; LORENZO COLEMAN, in
his personal capacity; TAFARI BEARD, in his
personal capacity; UNKNOWN OFFICER 1
in his personal capacity; UNKNOWN
OFFICER 2 in his personal capacity;
CITY OF BATON ROUGE, and
PARISH OF EAST BATON
ROUGE.

                    Defendants.


## PLAINTIFFS' OPPOSITION TO DEFENDANT
## BEARD'S MOTION TO DISMISS

NOW INTO COURT, through undersigned counsel, come Plaintiffs Lakeisha Varnado,

individually and on behalf of minors K.A.V. and K.E.V., and Tredonovan Raby, on behalf of

minor T.R., who file this opposition to the Motion to Dismiss (R. Doc. 49) filed by Defendant

Tafari Beard. For the reasons stated herein, the Motion should be denied in full.

## I.      BACKGROUND

Plaintiffs filed a Complaint in this matter on February 20, 2024.[1] On June 4, 2024,

Plaintiffs filed an Amended Complaint.[2] On August 29, 2024, Defendant Beard filed a Motion to

_____

[1] R. Doc. 1.

[2] R. Doc. 9.

1

Dismiss under Rule 12(b)(6), as well as asserting qualified immunity.[3] On January 17, 2025, Plaintiffs filed a Motion to Amend Complaint.[4] That motion was granted on February 12, 2025 and Plaintiffs filed a Second Amended Complaint ("SAC") on the same date.[5] In their SAC, Plaintiffs brought claims against Individual Defendant Officers employed by the Baton Rouge Police Department, including Defendant Tafari Beard, along with the City of Baton Rouge and the Parish of East Baton Rouge. The SAC alleges fourteen claims for Unreasonable Seizure, Unreasonable Search, Failure to Intervene, Excessive Force, unconstitutional policies and practices under *Monell*, and state law claims for battery, assault, Intentional Infliction of Emotional Distress, Negligence, and violations of the Louisiana Constitution.[6] On March 7, 2025, Defendant Beard filed a Motion to Dismiss all claims against him, pursuant to Federal Rule of Civil Procedure 12(b)(6) and under the doctrine of qualified immunity.

## II.    FACTS

On June 6, 2023, Defendant Tafari Beard, an officer with the Baton Rouge Police Department ("BRPD"), acting jointly and in concert with Defendants Carboni, Coleman, Kennedy and Unknown Officers 1 and 2, conducted an early morning raid of Plaintiffs' home and egregiously violated the constitutional rights of Plaintiffs, including the minor children.[7] Defendant Beard is a member of BRPD's Street Crimes Unit, as are other Individual Defendant

---

[3] R. Doc. 25.

[4] R. Doc. 45.

[5] R. Doc. 47, R. Doc. 48.

[6] R. Doc. 48.

[7] SAC, R. Doc. 48.

Officers.[8] During this raid, Defendant Officers detained K.E.V., struck him in the face with a Taser, handcuffed him, shackled him at the ankles, and placed him in the back of a police vehicle.[9] Defendant Beard opened the door of the vehicle, pulled out his Taser and pointed it at K.E.V. while the juvenile was sitting in the vehicle shirtless, barefoot, handcuffed behind his back, and shackled at his ankles.[10] Another one of the minors, T.R., who was only 11 years old, was forced out of his home by a SWAT team while wearing only his underwear.[11] He was then separated from his mother and placed in Defendant Beard's police vehicle, where he was detained for an hour or two.[12] Defendant Beard restricted T.R.'s ability to move freely by refusing to allow him to use the restroom for approximately 30 minutes.[13] Defendant Beard continued to restrict and control T.R.'s movement by escorting him into the home to allow him to get dressed.[14] Defendant Beard returned T.R. to his police vehicle, where the young boy was further detained.[15]

Defendant Beard then transported T.R. to the infamous B.R.A.V.E. Cave.[16] The B.R.A.V.E. Cave was a warehouse utilized by the Baton Rouge Police Department Street Crimes

---

[8] *Id.* ¶ 51.

[9] *Id.* ¶¶ 14, 16.

[10] *Id.* ¶ 16, photo on p. 5.

[11] *Id.* ¶ 12.

[12] *Id.* ¶¶ 18, 20.

[13] *Id.* ¶ 21.

[14] *Id.* ¶ 23.

[15] *Id.* ¶¶ 23, 30.

[16] *Id.* ¶ 24.

Unit as a Black Site.[17] The BRPD used the facility for at least two decades.[18] The Street Crimes Unit would take individuals in its custody to this location and strip search them.[19] Defendant Coleman has been quoted as saying "everyone who goes [to the B.R.A.V.E. Cave] gets stripped."[20] Any video cameras that were inside the B.R.A.V.E. Cave did not capture the unconstitutional acts that occurred inside the facility.[21] The use of the B.R.A.V.E. Cave is part of the BRPD's unconstitutional policy and practice of conducting strip searches without a lawful basis.[22]

While detained in the B.R.A.V.E. Cave, T.R. was unlawfully strip searched.[23] Defendant Carboni took T.R. from his mother's care and custody and transported him to a bathroom where he committed a sexual battery and unconstitutional strip and body cavity search of the 11 year-old boy.[24] Defendant Beard stood at the bathroom doorway as this took place, did nothing to prevent it, and stood watch to ensure that none of the boy's family members could witness these unconstitutional acts.[25] Plaintiff K.E.V., also a minor, was also subjected to constitutional violations while detained in the B.R.A.V.E. Cave.[26] Defendant Coleman dragged K.E.V. into a

---

[17] *Id.* ¶ 66, 73.

[18] *Id.* ¶ 70.

[19] *Id.* ¶ 48, n. 26

[20] *Id.* ¶ 40.

[21] *Id.* ¶ 69.

[22] *Id.* ¶¶ 48-58.

[23] *Id.* ¶ 29.

[24] *Id.* ¶¶ 29-30.

[25] *Id.* ¶¶ 29, 31.

[26] *Id.* ¶¶ 36, 37.

holding cell and choked the juvenile while he was handcuffed.[27] Defendant Kennedy later struck K.E.V., knocking him unconscious.[28] Defendant Beard was present throughout these unconstitutional acts of violence and took no action to prevent them.[29]

## III.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) is disfavored.[30] In analyzing a motion to dismiss under 12(b)(6), the court must determine whether the plaintiff has pled a legally cognizable claim, rather than evaluate the likelihood of success.[31] When evaluating a motion to dismiss, all well-pleaded facts must be viewed in the light most favorable to the plaintiff.[32] All inferences must be interpreted in favor of the plaintiff.[33] Under Rule 12(b)(6), the complaint and its attachments "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[34] Even if a plaintiff's complaint is found deficient under Rule 12(b)(6), the proper remedy, in most circumstances, is to allow the plaintiff to amend the complaint to cure any deficiencies, rather than dismissal with prejudice.[35]

---

[27] *Id.* ¶ 36.

[28] *Id.* ¶ 37.

[29] *Id.*

[30] *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[31] *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).

[32] *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (*en banc*).

[33] *Weiser v. Castille*, No. 22-30720, 2023 U.S. App. LEXIS 18244, at *9 (5th Cir. July 18, 2023).

[34] *Id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[35] *Public Health Equip. & Supply Co. v. Clarke Mosquito Control Equip., Inc.*, 410 Fed. Appx. 738, 740 (5th Cir. 2010).

A defendant is only entitled to qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[36] Qualified immunity includes two inquiries. First, whether the officer violated a constitutional right and second, whether the right at issue was "clearly established" at the time of misconduct.[37]

## IV.     ANALYSIS

Defendant Beard has moved to dismiss all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and based on the doctrine of qualified immunity. As further articulated below, Defendant Beard's motion should be denied in its entirety, as Plaintiffs have sufficiently pled their claims against Defendant Beard. Further, Defendant Beard is not entitled to qualified immunity, as his actions violated the Constitution, which was clearly established at the time of his conduct.

### a. Plaintiffs Have Plead Facts to Support an Excessive Force Claim Against Defendant Beard

In their Second Amended Complaint, Plaintiffs have pled sufficient facts to support an excessive force claim against Defendant. Any force used by an officer must be objectively reasonable."[38] Whether the force used is excessive depends on the facts and circumstances of each case.[39] Here, Defendant Beard used force against K.E.V. that was objectively unreasonable,

---

[36] *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).

[37] *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

[38] *Graham v. Connor*, 490 U.S. 386, 396 (1989)

[39] *Lombardo v. City of St. Louis, Missouri*, 141 S. Ct. 2239, 2241, 210 L. Ed. 2d 609 (2021).

in light of the facts and circumstances, and the law was clearly established at the time of the incident. He pointed a weapon at an unarmed juvenile sitting in the back of a police vehicle while the minor was handcuffed, shackled, barefoot, and shirtless. As alleged in Plaintiffs' Complaint, K.E.V. was posing no threat to the officers, to himself, or to anyone else. The Fifth Circuit has held that the "law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable."[40] More specifically, it was clearly established at the time of this incident that pointing a weapon at an individual establishes a use of force, which is objectively unreasonable when that force is used on someone who is unarmed, subdued, and poses no danger.[41] This is particularly true when an officer points a weapon at a minor, as "there is a robust consensus that pointing a gun at compliant children is objectively unreasonable."[42] Courts have also denied qualified immunity to officers for the use of a Taser against a handcuffed individual who posed no threat to the officers.[43]

In his Memorandum in Support of his Motion to Dismiss, Defendant Beard argues that he had "a reasonable basis" to use force against K.E.V. because he alleges that the juvenile was

---

[40] *Perkins v. Hart*, No. 22-30456, 2023 U.S. App. LEXIS 31734, at *6 (5th Cir. Nov. 30, 2023)

[41] *Pigott v. Gintz*, No. 23-30879, 2024 U.S. App. LEXIS 31627, at *24-27 (5th Cir. Dec. 12, 2024) (Collecting cases); *See also Hopkins v. Bonvicino*, 573 F.3d 752, 776 (9th Cir. 2009) (finding excessive force where an officer pointed a weapon at unarmed suspect); *Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir.2002);
*Blackmon v. City of Beverly Hills*, No. 2:21-cv-08381-AB-AFM, 2023 U.S. Dist. LEXIS 145478, at *23 (C.D. Cal. Aug. 18, 2023)

[42] *Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 U.S. Dist. LEXIS 22047, at *24 (W.D. Tex. Jan. 31, 2020) (there is a robust consensus that pointing a gun at compliant children is objectively unreasonable."); *See also Holland v. Harrington*, 268 F.3d 1179, 1192-93 (10th Cir. 2001) ("Pointing a firearm directly at a child calls for even greater sensitivity to what may be justified or what may be excessive under all the circumstances."); *Motley v. Parks*, 432 F.3d 1072, 1089 (9th Cir. 2005) (*en banc*) (holding an infant at gunpoint constitutes excessive force *McDonald v. Haskins,* 966 F.2d 292, 294-95 (7th Cir.1992) (pointing a gun at a nine-year-old child during a search and threatening to pull the trigger was "objectively unreasonable").

[43] *See Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013);

"kicking and knocking the interior of the vehicle attempting to break out the window and refused to cease doing this despite officers' multiple commands."[44] Essentially, Defendant Beard argues that despite being handcuffed and shackled in the back of a police vehicle, K.E.V. was not subdued or compliant with officers. This argument should be rejected, as it relies on facts not alleged in the complaint and asks this court to improperly accept Defendant Beard's interpretation of the Body Worn Camera footage. "Defendant's version of events…is utterly irrelevant at this point in the lawsuit."[45] While it is true that a court is not required to favor a plaintiff's allegations over video evidence,[46] where the video is ambiguous, incomplete, or establishes a factual dispute, a court must make all inferences from the video in plaintiff's favor.[47] Here, Defendant Beard claims that the video depicts K.E.V. was "kicking and knocking the interior of the vehicle."[48] However, the windows of the vehicle are tinted, making it impossible to observe anything inside the vehicle. Defendant Beard is therefore asking this court to take an inference in his favor about K.E.V.'s actions while not visible on screen, which would be clearly improper at this stage.

Finally, even if this Court were to accept Defendant Beard's interpretation of the incident (which it cannot properly do at this stage), his argument still fails. Assuming, *arguendo*, that K.E.V. was kicking the inside of the vehicle, it is clear from the video that any such conduct had

---

[44] R. Doc. 49-1 at 9.

[45] *Dolson v. Vill. Of Washingtonville*, 382 F. Supp. 2d 598, 602 (S.D.N.Y. 2005).

[46] *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017)

[47] *See Crane v. City of Arlington*, 50 F.4th 453, 461-62 (5th Cir. 2022); *Edwards v. Oliver*, 31 F.4th 925, 930-31 (5th Cir. 2022) (declining to consider video evidence where the video itself created a genuine factual dispute)

[48] R. Doc. 49-1 at 9.

ceased prior to Defendant Beard's use of force. The video is unambiguous that when Defendant

Beard opened the car door, K.E.V. was seated in the back of the vehicle with his bare feet on the

ground. At the point Defendant Beard brandishes his weapon, K.E.V. is clearly not "kicking" or

"knocking" the car and is not actively resisting in any way.[49]

Defendant Beard appears to also argue that K.E.V. was not compliant because he said, "I

don't care" and "Tase me."[50] This is again improperly asking the Court to take an inference in his

favor. Moreover, expressing verbal opposition or being disrespectful toward police is not

unlawful and does not justify the use of force.[51]

In his Memorandum, Defendant Beard also asserts that "the threat of a Taser by an officer

or jail administrator where the arrestee or inmate refuses command is considered reasonable."[52]

However, the case law he relies on is highly distinguishable. *Story v. Norwood* involved a prison

---

[49] *See Lytle v. Bexar County*, 560 F.3d 404, 413 (5th Cir. 2009) (an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased."); *also Tucker v. City of Shreveport*, 998 F.3d 165, 181-82 (5th Cir. 2021) ("[A] use of force that may begin as reasonably necessary in order to obtain compliance may cease to be so as a suspect becomes more compliant."); *Joseph*, 981 F.3d at 335 ("Force must be reduced once a suspect has been subdued."); *Pigott v. Gintz*, No. 23-30879, 2024 U.S. App. LEXIS 31627, at *19 (5th Cir. Dec. 12, 2024) ("In other words, because force must be proportionate to the perceived threat, the continued use of force becomes unreasonable when any such threat ceases to exist.")

[50] Notably, Defendant Beard selectively quotes K.E.V., who says "that's illegal" in reference to being threatened with the Taser, further stating that he was handcuffed and shackled. A reasonable inference is that the statement "Tase me" was not a directive for Defendant Beard to Tase him, but part of a statement, "that's illegal [to] Tase me."

[51] *See Houston v. Hill*, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally  to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *See also Soto v. Bautista*, No. 21-40803, 2023 U.S. App. LEXIS 7160, at *8 (5th Cir. Mar. 24, 2023) ("It is axiomatic under our precedents that applying violent force to an unarmed person who is "restrained and subdued" violates the Constitution… This is true *even when* evidence establishes that the plaintiff acted disrespectfully toward the defendant-officer or engaged in passive resistance.") (emphasis in original).

[52] R. Doc. 49-1 at 10.

riot where individuals were breaking lights and flooding toilets.[53] At the time he threatened the use of his Taser, the defendant guard was attempting to unplug the toilet to stop the ongoing flooding and regain control during the ongoing disturbance.[54] Not only is this factually distinguishable from the case at bar, it involved a different standard, as the court had to analyze whether the force was exercised "in good faith to restore discipline" inside the institution.[55] In *Salazar v. Molina*, the plaintiff was a fleeing felony suspect who had led a police on a dangerous hot pursuit.[56] The court found that the plaintiff had "put officers and bystanders in harm's way" and that the officers could have reasonably believed the purported surrender was a ploy, given the prior evasion and that the plaintiff was unrestrained and potentially in possession of a weapon.[57] None of those circumstances were present here. Similarly, in *Ramirez v. Escajeda*, the officer responded to a 911 call that he believed was an ambush.[58] It was during the night, it was dark, the officer could not see the suspect's hands, and he believed he might have a weapon.[59] That is completely inapposite to the facts in this case. Importantly, the cases cited by Defendant Beard all involved a suspect who had free movement of their hands and legs, making it possible that they could flee or strike the officers. None of the cited cases involved someone who was handcuffed behind their back and shackled at their ankles. Equally significant is that none of the cases involved a minor, let alone a juvenile who was fully restrained like K.E.V. was. In

---

[53] *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011).

[54] *Id.*

[55] *Id.*

[56] *Salazar v. Molina*, 37 F.4th 278 (5th Cir. 2022).

[57] *Id.* at 282.

[58] *Ramirez v. Escajeda*, 44 F.4th 287, 293-94 (5th Cir. 2022).

[59] *Id.*

conclusion, Plaintiffs have sufficiently pled facts to support an excessive force claim against Defendant Beard, he is not entitled to qualified immunity, and his motion to dismiss should be denied as to this count.

### b. Plaintiffs Have Sufficiently Alleged an Unreasonable Seizure Claim Against Defendant Beard

Plaintiffs have plausibly alleged that Defendant Beard unlawfully detained Plaintiff T.R. in a clearly established violation of the Constitution. To state a claim for unlawful detention, a plaintiff must allege: (1) a detention occurred; and (2) the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring.[60] When a detention becomes prolonged, it can amount to a *de facto* arrest, and must be supported by probable cause.[61] "An arrest occurs when, 'in view of the all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"[62] This is a fact-specific inquiry.[63]

Here, it is undisputed that T.R. was detained. He was forced out of his home by armed police officers.[64] He was held in Defendant Beard's police vehicle for an hour or two.[65] He was prevented from freely moving in order to use the restroom for over 30 minutes.[66] It is further

---

[60] *Cox v. Columbia Casualty Co.*, No. 12-306-SDD-SCR, 2014 U.S. Dist. LEXIS 417, at *19 (M.D. La. Jan. 3, 2014) (citing *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968).

[61] *Lincoln v. Turner*, 874 F.3d 833, 841-42 (5th Cir. 2017).

[62] *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

[63] *Lincoln v. Turner*, 874 F.3d 833, 841 (5th Cir. 2017).

[64] SAC ¶ 12.

[65] *Id.* ¶ 20.

[66] *Id.* ¶ 21.

clear that Defendant Beard was responsible for T.R.'s detention, as he was the person controlling T.R.'s ability to move.[67] As T.R. was in the B.R.A.V.E. Cave bathroom, Defendant Beard stood at the doorway, preventing his ability to leave.[68]

In looking at the circumstances of the incident, and making all reasonable inferences in Plaintiffs' favor, T.R. was subjected to a *de facto* arrest requiring probable cause. He was only 11 years old at the time.[69] He was sobbing when separated from his mother.[70] He was placed in a police vehicle and taken to a warehouse used by police officers.[71] In total, he was in custody for several hours.[72] Given those circumstances, a reasonable person in T.R.'s circumstances would believe they were not free to leave.[73] "It is beyond debate that 'a warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment.'"[74] Here, Defendant Beard makes no argument that he had probable cause to believe the 11 year-old T.R. had committed any crime. Rather, he relies only on the argument that the officers were executing a valid *search* warrant. Defendant Beard relies again on reports and facts not included in Plaintiff's complaint. Moreover, a warrant to search the premises does

---

[67] *Id.* ¶¶ 18, 23, 24.

[68] *Id.* ¶ 31.

[69] *Id.* ¶ 18.

[70] *Id.*

[71] *Id.* ¶ 24.

[72] *Id.* ¶¶ 20, 29.

[73] *Lincoln v. Turner*, 874 F.3d 833, 841-41 (5th Cir. 2017) (Person held in handcuffs in the back of police car for two hours required probable cause); *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008) (Arrest occurred where person was transported to different locations for 90 minutes); *United States v. Place*, 462 U.S. 696, 710 (1983) (Prolonged detention of 90 minutes required probable cause).

[74] *Bailey v. Iles*, 78 F.4th 801, 812 (5th Cir. 2023).

not lawfully permit the arrest of everyone in the home. Further, even if this court were to determine that T.R.'s detention did not rise to the level of a *de facto* arrest, Defendant Beard did not even have reasonable suspicion that T.R. had committed a crime to justify such a prolonged detention.[75]

### c. Plaintiffs Have Sufficiently Alleged a Failure to Intervene Claim Against Defendant Beard

Defendant Beard failed to intervene to prevent the clearly established   constitutional violations that were perpetrated on the Plaintiffs, An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's unconstitutional actions may be liable under section 1983.[76] That liability attaches when "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'"[77] Defendant Beard baldly asserts that "nowhere do Plaintiffs actually state or sufficiently allege facts that Officer Beard was involved, much less present, for any constitutional violations…"[78] Contrary to his claim, in Plaintiffs' Amended Complaint, they plainly allege that Officer Beard "was present when K.E.V. was being choked and knocked unconscious by two other officers."[79] Liability of an officer for failing to intervene

---

[75] *Loftis v. Ramos*, 491 F. Supp. 3d 753, 766-67 (S.D. Cal. 2019) (Denying qualified immunity where reasonable officers would know it is unlawful to detain child for three and a half hours while keeping him separated from his mother and in the custody of uniformed strangers);

[76] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

[77] *Whitley v. Hanna*, 726 F. 3d 631, 646 (5th Cir. 2013).

[78] R. Doc. 49-1 at 10.

[79] SAC ¶ 112(b).

in the use of excessive force by another law enforcement officer has been found by courts in this district as far back as 1984.[80]

Defendant Beard asserts that the Body Worn Camera reflects that he did not observe any sort of constitutional violation.[81] However, Plaintiffs clearly allege in their SAC, that Defendant Beard and the other officers failed to activate their Body Worn Cameras during the unlawful actions at B.R.A.V.E. Cave and therefore, no footage exists.[82] It is outrageous for Defendant Beard to fail to record the unconstitutional conduct and then rely on that very lack of documentation to support his claim that it never happened. Not only does that improperly ask the court to adopt his version of events, it defies common sense.

Defendant Beard also argues that Plaintiffs have not alleged that Defendant Beard "had the requisite knowledge that Carboni or other officers were allegedly violating any constitutional rights."[83] This is flatly contradicted by Plaintiffs' complaint, as Plaintiffs allege that while Defendant Carboni subjected T.R. to an unlawful strip search and sexual battery, Defendant Beard stood at the doorway of the room and "stood watch."[84] An officer who does not directly conduct an unlawful search, but is present at the scene when such a search takes place, may be liable under the doctrine of "bystander liability."[85]

---

[80] *Coleman v. Lee*, No. 15-2365, 2018 U.S. Dist. LEXIS 168403, at *16 (W.D. La. Sep. 28, 2018).

[81] R. Doc. 49-1 at 11.

[82] SAC ¶¶ 26, 69.

[83] R. Doc. 49-1 at 15.

[84] SAC ¶¶ 29, 31.

[85] *Scoggins v. City of Houston*, No. 4:18-CV-01312, 2019 U.S. Dist. LEXIS 120552, at *13 (S.D. Tex. July 19, 2019) (Denying summary judgment for officers whom plaintiff identified as being on the scene when he was strip searched).

Moreover, Defendant Beard had the requisite knowledge that the Constitution was being violated during this incident. Plaintiffs' complaint clearly alleges sufficient facts to show that Defendant Beard was aware of BRPD's pattern and practice of conducting illegal strip searches, excessive force, and other constitutional violations at the B.R.A.V.E. Cave.[86] According to Defendant Coleman, "everyone who goes [to the B.R.A.V.E. Cave] gets stripped."[87] Taking all inferences in the light most favorable to Plaintiffs, the reasonable conclusion is that as a member of the Street Crimes Unit, Defendant Beard knew exactly what was going to happen to Plaintiffs at the B.R.A.V.E. Cave. However, not only did he fail to take reasonable measures to prevent Plaintiffs from being transported to this warehouse of torture, he personally drove 11-year-old T.R. to the site. In determining whether a plaintiff has sufficiently alleged a bystander liability claim, the court must consider whether the officer acquiesced in the alleged constitutional violation.[88] Here, Defendant Beard clearly "acquiesced" to the unconstitutional actions at the B.R.A.V.E. Cave, including the excessive force against K.E.V. and the strip search of T.R. Defendant Beard's motion should therefore be denied as to this count.

d.   Plaintiffs have alleged sufficient facts to support a §1983 conspiracy

Under §1983, "the function of [the] conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint."[89] "To be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of the conspiratorial

---

[86] SAC ¶¶ 41-100.

[87] *Id.* ¶ 40.

[88] *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013)

[89] *Jones v. City of Chicago*, 856 F2d 985, 992 (7th Cir 1988).

15

scheme or even know who the other conspirators are. It is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them."[90]

As the detailed facts alleged in Plaintiffs' SAC and the reasonable inferences to be drawn therefrom clearly demonstrate,  Defendant Beard was engaged in a common venture with his co-Defendants - - - to violate the Constitutional rights of the Plaintiffs at the Plaintiffs' residence, in his squad car, and at the B.R.A.V.E. cave - - -, that he committed several unconstitutional overt acts in furtherance of that common venture, and that he can therefore be held jointly liable for all the unconstitutional actions alleged in Plaintiffs' complaint.

### e.  Defendant Beard Makes No Argument to Dismiss Plaintiffs' State Law Claims

Defendant Beard asserts that Plaintiffs' "state law claims must fail," but makes no argument in support and simply states "for the same reasons noted above."[91] However, he makes no argument pursuant to Rule 12(b)(6) as to how Plaintiffs' allegations fail to state a claim for relief under state law. Further, his arguments based on qualified immunity are inapplicable, as "federal qualified immunity does not apply to state-law claims."[92] As such, he has waived any argument as to these counts and his motion should therefore be denied.[93]

---

[90] Id.

[91] R. Doc. 49-1 at 15.

[92] *Tuttle v. Sepolio*, 68 F.4th 969, 976 (5th Cir. 2023)

[93] *See United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000) (Failure to brief and argue an issue constitutes waiver.).

## V. **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that this Court should deny

Defendant Beard's Motion to Dismiss.

Respectfully submitted,

 /s/ Jessica Hawkins
Jessica F. Hawkins

P.O. Box 5072
Baton Rouge, LA 70802
(915) 217-9192
jessicahawkins0421@gmail.com

/s/ Ryan K. Thompson
Ryan K. Thompson
12605 South Harrell Ferry Rd Ste 5
Baton Rouge, LA 70816
(332) 217-8032
RKTsocialjustice@gmail.com

/s/ Brad J. Thomson
Brad J. Thomson*
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070