UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LAKEISHA VARNADO, ET AL.                    CIVIL ACTION

VERSUS                                       24-133-SDD-RLB

JOSEPH CARBONI, ET AL.

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant Tafari Beard ("Beard"). Plaintiffs Lakeisha Varnado ("Varnado"), individually and on behalf of minors K.A.V. and K.E.V., and Tredonovan Raby, on behalf of minor T.R., filed an *Opposition*,[2] to which Beard filed a *Reply*.[3] For the following reasons, Beard's *Motion*[4] shall be granted in part and denied in part.

## I.    BACKGROUND

This case involves police officers' alleged treatment of individuals who were detained during the execution of a search warrant. The operative *Complaint*[5] alleges the following facts: In the early hours of June 6, 2023, Varnado and her three minor sons K.A.V., K.E.V., and T.R. ("Plaintiffs") were at their home in East Baton Rouge Parish when several Baton Rouge police officers burst in through the front door and windows.[6] The officers were executing a search warrant on the house.[7] K.A.V. and K.E.V. attempted to

---

[1] Rec. Doc. 49.
[2] Rec. Doc. 56.
[3] Rec. Doc. 59.
[4] Rec. Doc. 49.
[5] Rec. Doc. 48.
[6] *Id.* at p. 3.
[7] *Id.* at p. 34.

exit the house as they allegedly believed the house was being burglarized.[8] Defendant Unknown Officer 2 detained K.A.V. in the kitchen.[9]

K.E.V., meanwhile, exited from the rear of the house.[10] Defendant Unknown Officer 1 then detained K.E.V., hit him in the face with a taser, and handcuffed him.[11] While K.E.V. was handcuffed and shackled, Beard used his taser to threaten K.E.V.[12] During their confrontations with the officers, both K.A.V. and K.E.V. complained to officers on the scene, including Beard, about the amount of force being used against them.[13] The officers allegedly failed to document the use of force.[14]

T.R. was asleep in his room when the officers entered the house.[15] He heard the officers announce themselves as Baton Rouge Police Department ("BRPD").[16] T.R., while wearing only his underwear, was instructed by an officer to "come out with [his] hands up," and T.R. was then taken to the SWAT truck.[17] T.R., who was 11 years old at the time, asked to be with his mom, so officers moved T.R. to the back of Beard's vehicle with Varnado.[18]

T.R. then sat in the back of Beard's vehicle, wearing only his underwear, for an hour or two.[19] While sitting in Beard's vehicle, T.R. asked Beard and other officers if he could use the restroom approximately six times in thirty minutes.[20] Neither Beard nor the

---

[8] *Id.* at p. 4.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at p. 5.
[14] *Id.*
[15] *Id.* at pp. 4, 6.
[16] *Id.* at p. 4.
[17] *Id.*
[18] *Id.* at p. 5.
[19] *Id.*
[20] *Id.*

other officers allowed T.R. to use the restroom.[21] After hours of T.R. sitting in Beard's vehicle in only his underwear, Beard escorted T.R. into the house to get dressed.[22] T.R. got dressed in front of Beard and other officers and was then put back into Beard's vehicle.[23]

Beard, Coleman, and other officers left Plaintiffs' house unlocked and open to the elements.[24] Plaintiffs were then taken to the "BRAVE Cave," a facility used by the BRPD Street Crimes Unit.[25] Beard transported Varnado and T.R., and other officers transported K.A.V. and K.E.V.[26]

Over the span of several hours in the BRAVE Cave, T.R. and Varnado asked officers to contact T.R.'s father or other relatives to pick T.R. up, but those requests were denied.[27] At some point, a BRPD officer threatened to call Child Protective Services if T.R. could not quickly make contact with his father.[28] Varnado alleges she was subjected to a strip and visual body cavity search by Carboni.[29]

After almost two hours at the BRAVE Cave, T.R. again asked to use the restroom.[30] Carboni took him to the restroom and then performed a strip and body cavity search on T.R.[31] Beard stood watch by the door while the search occurred.[32] Plaintiffs also allege that Beard "observed the acts against T.R."[33] During the search, Carboni told

---

[21] *Id.* at p. 6.
[22] *Id.*
[23] *Id.*
[24] *Id.* at pp. 6–7.
[25] *Id.* at pp. 6, 10.
[26] *Id.* at pp. 6, 21.
[27] *Id.* at pp. 9, 21.
[28] *Id.* at p. 35.
[29] *Id.* at p. 8.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at p. 23.

T.R. to strip, held T.R.'s penis, spread T.R.'s buttocks, and touched T.R.'s anus.[34] T.R. was then taken back to Varnado, and he told her about the search.[35] T.R. was eventually released without formal arrest.[36]

K.E.V. was also separated from Varnado while at the BRAVE Cave.[37] While handcuffed, Coleman allegedly dragged K.E.V. into a holding cell, choked him, and left him in the holding cell shackled to a cement block.[38] Later, while K.E.V. was still shackled in the holding cell, Kennedy hit K.E.V., which knocked him unconscious.[39] Kennedy left the unconscious K.E.V. in the holding cell.[40]

Plaintiffs assert the following claims against all Defendants:[41] state law claims for battery, assault, intentional infliction of emotional distress, and negligence; and claims for the violation of Article I, Sections 2 and 5 of the Louisiana Constitution.[42] Against Tafari Beard, Joseph Carboni, Lorenzo Coleman, David Kennedy, Unknown Officer 1, and Unknown Officer 2, Plaintiffs assert an unreasonable seizure claim under the Fourth Amendment, a claim for failure to intervene under the Fourth Amendment, and a claim of cruel and unusual punishment under the Eighth and Fourteenth Amendments.[43] Plaintiffs also assert a claim of unreasonable search under the Fourth Amendment against Joseph Carboni.[44] Additionally, Plaintiffs assert an excessive force claim against Joseph Carboni,

---

[34] *Id.* at p. 9.
[35] *Id.*
[36] *Id.* at p. 14.
[37] *Id.* at p. 9.
[38] *Id.* at pp. 9, 39.
[39] *Id.* at pp. 9, 23, 36, 39.
[40] *Id.* at pp. 9–10.
[41] Plaintiffs also raise these claims against Murphy Paul, who is not a party to this matter. *Id.* at pp. 34–37.
[42] *Id.*
[43] *Id.* at pp. 21–23, 38–39.
[44] *Id.* at p. 22.

Lorenzo Coleman, David Kennedy, Unknown Officer 1, and Unknown Officer 2.[45] Plaintiffs assert a claim for municipal liability under *Monell*[46] and a failure to train, supervise, and discipline claim against the City of Baton Rouge and Parish of East Baton Rouge.[47] Plaintiffs seek compensatory damages, special damages, punitive damages, and attorney's fees and costs.[48] Tafari Beard's motion to dismiss on the grounds of qualified immunity is presently before the Court.

## II.    LAW AND ANALYSIS

### A.    Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[49] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[50] The Court may also consider documents attached to a motion to dismiss if those documents "are referred to in the plaintiff's complaint and are central to her claim."[51] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[52]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked

---

[45] *Id.* at pp. 23–24.
[46] *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).
[47] Rec. Doc. 48, pp. 24–33.
[48] *Id.* at p. 39.
[49] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[50] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[51] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).
[52] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[53] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[54] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[55] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[56] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[57] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[58]

In the operative *Complaint*, Plaintiffs referenced footage from Beard's body worn camera and the camera inside his police vehicle on the date of the incident.[59] Beard urges the Court to consider the footage in conjunction with his *Motion*. Because the footage is referenced in the operative *Complaint* and depicts the events that are central to Plaintiffs' claims, the Court has reviewed the footage. However, the events depicted in the footage are subject to interpretation, and that interpretation is within the province of the factfinder.

---

[53] *Twombly*, 550 U.S. at 555 (2007).
[54] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter, "*Iqbal*").
[55] *Id.*
[56] *Id.*
[57] *Taha v. William Marsh Rice Univ.*, No. H-11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3,2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[58] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[59] Rec. Doc. 48, pp. 16–17.

Thus, the footage will not be considered in the Court's analysis, and the Court will rely solely on the facts alleged in the operative *Complaint* in its analysis of the *Motion*.

Additionally, "it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."[60] The parties briefed the issue of a § 1983 excessive force claim against Beard; however, the § 1983 excessive force count in the operative *Complaint* does not name Beard. Plaintiffs also raise an argument about a § 1983 conspiracy for the first time in their *Opposition*.[61] The Court will not consider the parties' arguments regarding a § 1983 excessive force claim against Beard or a § 1983 conspiracy claim because neither is pled in the operative *Complaint*.

## B.    Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[62] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[63]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[64]

---

[60] *Roebuck v. Dothan Sec. Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).
[61] Rec. Doc. 56, pp. 15–16.
[62] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[63] 42 U.S.C. § 1983.
[64] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[65] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[66]

## C.    Qualified Immunity

Public officials are entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated an actual constitutional or federal statutory right that is clearly established under existing law, and (2) if so, that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of that conduct.[67] Therefore, to survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts, which, taken as true, show that the defendant violated his constitutional rights which were clearly established at the time of the violation. If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights they are alleged to have violated.[68] The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law.[69]

---

[65] *See Blessing v. Freestone,* 520 U.S. 329, 340 (1997), *holding modified by Harz v. Borough of Spring Lake,* 234 N.J. 317 (2018); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe,* 740 F.2d 322, 324–25 (5th Cir. 1984).

[66] *See Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon,* 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier,* 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield,* 793 F.2d 737, 739 (5th Cir. 1986).

[67] *Porter v. Epps,* 659 F.3d 440, 445 (5th Cir. 2011); *Hart v. Tex. Dep't of Crim. Just.,* 106 F. App'x    244, 248 (5th Cir. 2004).

[68] *Anderson v. Creighton,* 483 U.S. 635, 638 (1987).

[69] *Id.* at 639.

### D.    Unreasonable Seizure

Varnado and T.R. allege that their transportation to and detention at the BRAVE Cave constituted an unreasonable seizure.[70] Specifically, Plaintiffs focus on the seizure of T.R. (age 11), who they assert "was not under arrest or accused of committing a criminal act."[71] Beard argues he acted reasonably when seizing Varnado and T.R. while executing a search warrant and is therefore entitled to qualified immunity.[72]

The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. A court may rely on either prong of the defense in its analysis.[73]

The Court begins with the clearly established prong. "The relevant question is whether a reasonable officer could have believed his or her conduct to be lawful, in light of clearly established law and the information the officers possessed."[74] Plaintiff must point "to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law."[75] The Supreme Court does not "require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."[76]

"The Fourth Amendment guarantees the right to be free from 'unreasonable searches and seizures.'"[77] Generally, Fourth Amendment seizures are reasonable only if

---

[70] Rec. Doc. 48, p. 21.

[71] *Id.*

[72] Rec. Doc. 49-1, pp. 12–13.

[73] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

[74] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (quoting *Anderson*, 483 U.S. at 641) (cleaned up).

[75] *Id.*

[76] *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up).

[77] *Davis v. Romer*, 600 F. App'x 926, 929 (5th Cir. 2015), *as revised* (Feb. 3, 2015) (quoting U.S. Const. amend. IV).

based on probable cause to believe that the individual has committed a crime.[78] However, pursuant to *Michigan v. Summers*, officers are permitted to detain occupants of a premises without probable cause while a search warrant for contraband is being executed.[79] A lawful seizure "'can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.'"[80] Therefore, the right not to be detained by law enforcement without probable cause for hours after a warranted search ceases is clearly established. Furthermore, no reasonable officer could have believed that the continued detention of a minor without probable cause was lawful.

The Court must now consider whether Plaintiffs have adequately alleged that Beard violated their constitutional rights. Plaintiffs allege that T.R. was detained in Beard's vehicle for hours while officers were executing a search warrant upon Plaintiffs' house.[81] Beard then transported T.R. to the BRAVE Cave, where Beard continued to detain T.R.[82] Plaintiffs allege that their house was left unsecured by BRPD when they were transported to the BRAVE Cave.[83] Plaintiffs further claim T.R., who was 11 years old, was detained for over four hours without being accused of committing a criminal act.[84] T.R.'s requests to use the restroom were denied multiple times during this hours-long detention, and when he was finally allowed to go to the restroom, he was subjected to a strip and body cavity search.[85]

---

[78] *Bailey v. U.S.*, 568 U.S. 186, 192 (2013).
[79] *Id.* at 193 (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)).
[80] *Muehler v. Mena*, 544 U.S. 93, 101 (2005) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).
[81] Rec. Doc. 48, pp. 21, 34.
[82] *Id.* at p. 21.
[83] *Id.* at p. 6.
[84] *Id.* at p. 21.
[85] *Id.* at pp. 6, 8–9.

The Court is required to draw reasonable inferences in favor of Plaintiffs at this stage. Plaintiffs' allegation that the officers left the house without securing it and transported the Plaintiffs to the BRAVE Cave creates a strong inference that the warrant search had concluded. The Court, therefore, determines that the *Summers* exception to the Fourth Amendment did not apply to T.R.'s transportation to and detention at the BRAVE Cave because the execution of the search warrant had concluded. Accordingly, Beard needed a warrant or probable cause to continue to detain T.R. On these facts, T.R.'s Fourth Amendment right to be free from unreasonable seizure was violated.

### E.    Cruel and Unusual Punishment

Plaintiffs claim Defendants subjected them to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution as well as the Due Process Clause of the Fourteenth Amendment.[86] The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments."[87] The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits the States from "depriv[ing] any person of life, liberty, or property, without due process of law."[88] Plaintiffs allege that certain actions by "several BRPD officers" as well as acts of certain specified officers, i.e., Coleman, Kennedy, and Carboni, constituted punishment of the Plaintiffs.[89] However, Plaintiffs make no factual allegations that Beard contributed to this alleged punishment. Therefore, Plaintiffs have not adequately stated a plausible

---

[86] Rec. Doc. 48, p. 38.
[87] U.S. Const. amend. VIII.
[88] U.S. Const. amend. XIV.
[89] Rec. Doc. 48, pp. 38–39.

claim to relief for cruel and unusual punishment against Beard, and that claim is dismissed with prejudice.[90]

### F.    Failure to Intervene/Bystander Liability

To state a bystander liability claim under the Fourth Amendment, a plaintiff must allege that: (1) the officer knew that a fellow officer was violating the plaintiff's rights; (2) the officer had a reasonable opportunity to prevent the harm; and (3) the officer chose not to act.[91] A plaintiff must establish that the officer "knows that a fellow officer is violating an individual's constitutional rights."[92] However, "[m]ere presence at the scene of the alleged use of excessive force, without more, does not give rise to bystander liability."[93] The officer must have a "reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."[94] "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer acquiesce[d] in the alleged constitutional violation."[95] "In making the determination of whether or not an officer acquiesced to the excessive force, courts consider the duration of the alleged use of force and the location of the suspect in relationship to the observing officer."[96]

---

[90] Since Plaintiffs have now had three opportunities to state claims against Beard (i.e., Rec. Doc. 1, Rec. Doc. 9, and Rec. Doc. 48) and have failed to do so, the Court will not grant leave to further amend.
[91] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).
[92] *See McDonald v. McClelland*, 779 F. App'x 222, 226 (5th Cir. 2019) (per curiam).
[93] *Vasquez v. Chacon*, No. 3:08-CV-2046-M(BH), 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009), *aff'd*, 390 F. App'x 305 (5th Cir. 2010) (citing *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 507(W.D. La. 2001)); see also *Brown v. Wilkinson Cty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (per curiam) ("[plaintiff] concedes that he was harmed by three inmates and that an officer's mere presence, without more, does not give rise to a bystander liability claim.").
[94] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 2013 (citations omitted).
[95] *Whitley*, 726 F.3d at 647 (citations omitted).
[96] *Garrett v. Crawford*, No. SA-15-CV-261-XR, 2016 WL 843391, at *9 (W.D. Tex. March 1, 2016).

1.   Liability for the Search of T.R.

Plaintiffs have adequately pled a bystander liability claim against Beard as to T.R.'s strip and cavity search. The law was clearly established at the time of this incident that a warrant or probable cause was needed to perform a strip search.[97] The Court accepts the facts alleged in the operative *Complaint* as true. Plaintiffs claim that Beard transported Varnado and T.R. to the BRAVE Cave and that Beard had notice that everyone who goes to the BRAVE Cave gets strip searched.[98] Beard therefore knew that T.R., who was being held without probable cause, was likely to be strip searched at the BRAVE Cave. Because T.R. was observed getting dressed and was under continued surveillance leading up to the search,[99] the Court can infer that there was little to no chance that T.R. was hiding contraband. Considering that no facts indicate a justification for the search, the Court finds that on the facts pled, the strip and cavity search was without probable cause.

Plaintiffs allege Beard stood watch by the door and observed without intervening while T.R. was subjected to a strip and cavity search.[100] Plaintiffs assert that Beard had a reasonable opportunity to intervene because he was within close proximity to the search, and he viewed and heard what was occurring. Beard, however, chose not to act.[101] Therefore, Plaintiffs have adequately pled a bystander liability claim against Beard for T.R.'s strip and cavity search, and Beard is not entitled to qualified immunity.

2.   Liability for the Use of Force Against K.E.V.

---

[97] *See Lee v. Lawrence*, No. 23-1229, 2024 WL 3385644, at **10–11 (M.D. La. July 12, 2024) (citing *Sims v. City of New Orleans*, No. 03-3169, 2005 WL 1400440, at *14 (E.D. La. June 6, 2005) (concluding Supreme Court and Fifth Circuit precedent find strip searches without probable cause to be unlawful)).
[98] Rec. Doc. 48, pp. 6, 11, 14, 21.
[99] *Id.* at p. 8.
[100] *Id.* at pp. 8–9, 23.
[101] *Id.* at p. 23.

Plaintiffs also claim Beard is liable for his failure to intervene when K.E.V. was allegedly choked and knocked unconscious by two other officers.[102] However, Plaintiffs make no factual allegations establishing that Beard knew K.E.V. was about to be attacked or that he made a deliberate choice not to act. Plaintiffs also failed to allege facts that show Beard was in a proximity to observe and/or intervene in K.E.V.'s alleged attack. The operative *Complaint* does not contain sufficient factual allegations to determine whether Beard knew about the use of force or had the opportunity to react to the situation. Therefore, Plaintiffs have failed to plead a claim for bystander liability against Beard regarding the use of force against K.E.V., and that claim is dismissed with prejudice.[103]

### G.     State Law Claims

Beard argues that Plaintiffs' state law claims against him must fail because "Plaintiffs have failed to adequately plead any sufficient facts that support these [claims] or overcome Officer Beard's right to qualified immunity."[104] Beard relies on his argument to dismiss the § 1983 claims to urge dismissal of the state law claims.[105] In doing so, Beard invites the Court to apply federal qualified immunity to Plaintiffs' state law claims.[106] As Plaintiffs correctly state, federal qualified immunity does not apply to state law claims.[107] In Louisiana, however, a similar immunity is available for officials sued for actions performed within the course and scope of their official duties.[108] Beard's qualified

---

[102] *Id.*
[103] Since Plaintiffs have now had three opportunities to state claims against Beard (i.e., Rec. Doc. 1, Rec. Doc. 9, and Rec. Doc. 48) and have failed to do so, the Court will not grant leave to further amend.
[104] Rec. Doc. 49-1, p. 15.
[105] *Id.*
[106] *Id.*
[107] Rec. Doc. 56, p. 16.
[108] *See Knapper v. Connick*, 96-0434 (La. 10/15/96), 681 So. 2d 944, 947 (noting the Louisiana state immunity rules have been harmonized with federal immunity principles). *See also* Louisiana Revised Statute 9:2798.1 (grants immunity to public entities, as well as their officers and employees, for discretionary acts performed within the course and scope of their official duties).

immunity arguments will be interpreted as arguments for the application of Louisiana's equivalent immunity. Only the state law claims that are redundant to the federal claims pled are subject to the same qualified immunity reasoning and analysis.[109] The Court will discuss the state law claims in turn.

      1.   Assault and Battery

     "Under Louisiana law, a battery is defined as an intentional harmful or offensive contact with a person."[110] The plaintiff must allege that the person accused of battery "intended to inflict an offensive contact without the plaintiff's consent."[111] "Assault is the imminent threat of a battery."[112] The plaintiff must allege that they were placed in "reasonable apprehension of harmful or offensive contact."[113] Corrections officers cannot be held liable for use of force, unless that force is excessive.[114] "Under Louisiana law, the same standard is used in analyzing a state law claim of excessive force as a federal constitutional claim—reasonableness under the circumstances."[115] "The reasonableness of an officer's conduct is not measured [from] the view point of the victim but from that of a reasonable man in the officer's position."[116] Louisiana's state law qualified immunity is "[i]dentical to the federal standard."[117]

---

[109] *See Moresi v. State Through Department of Wildlife & Fisheries*, 567 So. 2d 1081, 1085 (La. 1990) (stating immunity is available for an official's conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

[110] *Fontenot v. Gusman*, No. 11-1772, 2012 WL 5196426, at *16 (E.D. La. Oct. 18, 2012) (citing *Doss v. Morris*, 86 F. App'x. 25, 27–28 (5th Cir.2004)).

[111] *Id.*

[112] *Doss*, 86 F. App'x at 28.

[113] *Fontenot*, 2012 WL 5196426, at *17.

[114] *Id.*

[115] *Escort v. Miles*, No. 6:17-CV-00484, 2018 WL 3580656, at *8 (W.D. La. July 25, 2018).

[116] *Id.* (citing *Picou v. Terrebonne Par. Sheriff's Off.*, 343 So.2d 306 (La. App. 1st Cir. 1977)).

[117] *Id. See also, Perrilloux v. City of Kenner*, No. 08-4287, 2009 WL 10680057, at *3 (E.D. La. Oct. 9, 2009).

Plaintiffs allege that officers with BRPD "initiated contact" with Plaintiffs while executing a search warrant.[118] However, when Plaintiffs specify the contact that allegedly constituted a battery, neither Beard nor his alleged actions are mentioned.[119] In fact, Plaintiffs have alleged no facts regarding any physical contact Beard made with any Plaintiff, much less contact that was harmful or offensive. Therefore, Plaintiffs have not adequately pled a claim for battery against Beard, and that claim is dismissed with prejudice.[120]

Plaintiffs also allege that Beard used a taser to threaten K.E.V. with physical harm.[121] Plaintiffs claim this incident occurred while K.E.V. was handcuffed at his wrists and shackled at his ankles, and therefore, posed no threat to officers or himself.[122] Plaintiffs assert that Beard's threat to use the taser placed K.E.V. in reasonable apprehension of a battery.[123]

Beard, relying on footage from his body worn camera, claims he pointed his taser at K.E.V. when he opened the vehicle's door to address K.E.V.'s actions.[124] According to Beard, K.E.V. was kicking and knocking the vehicle's interior in an attempt to break the window and refused to stop doing so.[125] Beard further asserts that the interaction lasted less than 12 seconds.[126] However, these arguments rely on facts that were not in the

---

[118] Rec. Doc. 48, p. 34.
[119] *Id.* at pp. 34–35.
[120] Since Plaintiffs have now had three opportunities to state claims against Beard (i.e., Rec. Doc. 1, Rec. Doc. 9, and Rec. Doc. 48) and have failed to do so, the Court will not grant leave to further amend.
[121] *Id.* at p. 35.
[122] *Id.* at p. 4.
[123] *Id.*
[124] Rec. Doc. 49-1, p. 8.
[125] *Id.* at p. 9.
[126] *Id.*

operative *Complaint* and footage that the Court has declined to consider in its analysis of this *Motion*.

The facts alleged in the operative *Complaint*, when taken as true, sufficiently allege that Beard's action of pointing a taser at K.E.V. placed K.E.V. in reasonable apprehension of harmful or offensive contact. Therefore, Plaintiffs have adequately pled sufficient facts to state an assault claim against Beard that is plausible on its face. Furthermore, if the facts in the *Complaint* are true, then K.E.V., a minor, posed little to no risk to the officers and had no chance of escape when Beard threatened him with a taser because K.E.V. was handcuffed at his wrists and shackled at his ankles. A reasonable man in Beard's position would not find using a taser to threaten a handcuffed and shackled minor to be a reasonable use of force. Therefore, Beard is not entitled to qualified immunity for Plaintiffs' state law assault claim.

In sum, Plaintiffs have not pled a claim for battery as to Beard. Plaintiffs have adequately alleged a claim for assault against Beard, and Beard is not entitled to qualified immunity for that claim.

### 2.    Negligence

Louisiana utilizes the duty/risk analysis to evaluate negligence claims.[127] "The duty/risk analysis consists of the following factors: (1) did the defendant owe a duty to the plaintiff; (2) was the duty breached; (3) was the conduct in question a substantial factor in bringing about the harm to the plaintiff, *i.e.*, was it a cause-in-fact of the harm which

---

[127] *Causer v. Ard*, No. 18-779-SDD-RLB, 2019 WL 3849155, at *7 (M.D. La. Aug. 15, 2019).

occurred; (4) was the risk, and harm caused, within the scope of protection afforded by the duty breached; and (5) actual damage."[128]

Louisiana's negligence analysis does not mirror the analysis utilized for any of the federal claims Plaintiffs have pled against Beard. Therefore, Beard cannot rely on his arguments under § 1983 to seek dismissal of Plaintiffs' negligence claim. "[T]he movant has the burden to show dismissal is warranted under Rule 12(b)(6)."[129] As Beard makes no relevant arguments as to why dismissal of Plaintiffs' negligence claim is warranted, he does not satisfy his burden as the movant under Rule 12(b)(6). Therefore, the *Motion* is denied as to the negligence claim against Beard.

### 3.    Intentional Infliction of Emotional Distress

Plaintiffs have asserted a claim for intentional infliction of emotional distress.[130] The Louisiana Supreme Court has held that

> in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[131]

The conduct complained of must be so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as utterly intolerable in a civilized community.[132] Liability arises only where the mental suffering or anguish is

---

[128] *Id.* (citing *Williams v. Domino's Pizza, Inc.*, No. 00-1043, 2001 WL 6724, at *4 (E.D. La. Jan. 2, 2001); *Roberts v. Benoit*, 605 So. 2d 1032, 1041 (La. 1991); *see also Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 698 (5th Cir. 2011)).

[129] *Cantu v. Guerra*, No. SA-20-CV-0746-JKP-HJB, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021) (citing *Ehiemua-Wiggins v. Napolitano*, No. H-09-2286, 2010 WL 519704, at *1 (S.D. Tex. Feb. 8, 2010)).

[130] Rec. Doc. 48, p. 34.

[131] *Nicholas v. Allstate Ins. Co.*, 1999-2522, p. 1 (La. 8/31/00), 765 So. 2d 1017, 1022 (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)).

[132] *White*, 585 So. 2d at 1209–10.

extreme, and the distress suffered must be such that no reasonable person could be expected to endure it.[133]

Louisiana's intentional infliction of emotional distress analysis does not mirror the analysis utilized for any of the federal claims Plaintiffs have pled against Beard. Therefore, Beard cannot simply incorporate by reference his § 1983 arguments to seek dismissal of this claim. "[T]he movant has the burden to show dismissal is warranted under Rule 12(b)(6)."[134] Because Beard makes no relevant arguments as to why dismissal of Plaintiffs' intentional infliction of emotional distress claim is warranted, he does not satisfy his burden as the movant under Rule 12(b)(6). Therefore, the *Motion* is denied as to the intentional infliction of emotional distress claim against Beard.

### 4.    Violation of Due Process Pursuant to La. Const. Art. I, § 2

Plaintiffs allege a due process violation by Beard under the Louisiana Constitution. Article I, Section 2 of the Louisiana Constitution, like its federal counterpart, provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." The Article I, Section 2 analysis does not mirror the analysis utilized for any of the federal claims Plaintiffs have pled against Beard. Thus, for the same reasons presented above, Beard has not carried his burden under Rule 12(b)(6). Therefore, the *Motion* is denied as to the Article I, Section 2 claim against Beard.

### 5.    Unreasonable Search and Seizure Pursuant to La. Const. Art. I, § 5

Plaintiffs allege Beard violated Article I, Section 5 of the Louisiana Constitution, which provides:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or

---

[133] *Id.* at 1210.
[134] *Cantu*, 2021 WL 2636017, at *1 (citing *Ehiemua-Wiggins*, 2010 WL 519704, at *1).

invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

This article is the state law corollary to the Fourth Amendment to the United States Constitution. The analysis of Plaintiffs' Article I, Section 5 claim tracks the analysis of their federal § 1983 unreasonable seizure claims. The Court has already held that Plaintiffs have adequately pled a § 1983 claim for unreasonable seizure and that Beard is not entitled to qualified immunity for that claim. Because the analysis for the state law corollary of this claim is the same, the *Motion* must be denied as to Plaintiffs' Article I, Section 5 claim.

## III.    CONCLUSION

Beard's *Motion to Dismiss*[135] is granted in part and denied in part. The following claims against Beard are dismissed with prejudice:[136] the failure to intervene claim regarding the use of force against K.E.V.; the battery claim; and the cruel and unusual punishment claim. The following claims asserted against Beard survive Beard's *Motion*: unreasonable seizure; failure to intervene regarding the strip and body cavity search of T.R.; state law assault; state law negligence; intentional infliction of emotional distress; the claim under Article 1, Section 2 of the Louisiana Constitution; and the claim under Article 1, Section 5 of the Louisiana Constitution.

**IT IS SO ORDERED.**

---

[135] Rec. Doc. 49.
[136] Since Plaintiffs have now had three opportunities to state claims against Beard (i.e., Rec. Doc. 1, Rec. Doc. 9, and Rec. Doc. 48) and have failed to do so, the Court will not grant leave to further amend.

Signed in Baton Rouge, Louisiana on <u>November 18, 2025</u>.

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**